IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RICHARD COX                                                                PETITIONER
ADC #115950

V.                                      NO. 5:02CV00234 JWC

LARRY NORRIS, Director,                                          RESPONDENT
Arkansas Department of Correction

## MEMORANDUM OPINION AND ORDER

Richard Cox,[1] an Arkansas Department of Correction inmate, brings this petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #1). In his response

(docket entry #4), Respondent concedes that Petitioner is in his custody and has

exhausted all nonfutile state remedies, see 28 U.S.C. § 2254(a) & (b), but asserts that the

petition should be dismissed for other reasons. Petitioner has replied to the arguments for

dismissal (docket entry #9). Because Petitioner's claims are without merit or procedurally

barred, the petition must be dismissed in its entirety.

### Background

In the early morning hours of May 18, 1996, Kingrale Collins told Petitioner he was

"going to get some money" that was owed him. They went to Collins's house in Wynne,

Arkansas, and got Collins's twelve-gauge pump shotgun. The gun had one shell in it, and

Petitioner loaded two more. He carried the shotgun until the two men crossed the railroad

tracks, when he handed it to Collins.

They first stopped at a house trailer and knocked on the door. No one answered,

and they left. According to Petitioner, Collins then stopped at two more residences by

_____

[1] Petitioner is represented by counsel in these proceedings.

himself and knocked on the doors, while Petitioner watched from a distance. Two witnesses for the state confirmed that they had heard knocks on their doors during this time period. The first witness testified that she looked through a window and saw two young black males standing at her door, holding a gun between them. She did not answer the door. The second witness testified that at about 2:00 or 3:00 a.m. he heard someone beating on his door. He went to the door, and no one was there. Later, he heard shots and went out to his porch where he saw "two guys" running down the street with a shotgun.

According to Johnny Strickland, the husband of the murder victim, he was in the bathroom, having just arrived at a friend's house with his wife at around 2:30 a.m. He heard shots, ran out to the living room, and found his wife, Holly, on the floor in a pool of blood in front of the door. She showed no signs of life. A forensic pathologist with the state crime lab testified that she died of a single shotgun wound to the right arm and right chest.

In Petitioner's statement to the police, he denied going to the front door where Holly Strickland was killed but stated that he heard three shots and heard the victim scream. He admitted that his fingerprints would be on two of the loaded shells in the shotgun and on the trigger as well because he had checked to make sure it was on safety. He denied killing Ms. Strickland and was adamant that Collins had done it. He did admit to carrying and hiding the shotgun as he ran away from the crime scene with Collins. When asked what would have happened if the man in the trailer had opened his door, Petitioner answered, "I guess he would have shot him." He told interrogating police officers that Collins asked him to imitate the victim's scream, and when Petitioner did, Collins laughed.

Soon after the shooting, the police received information about Collins's involvement. A search warrant was issued for Collins's house where the police found a shotgun, which proved to be the murder weapon used in the Strickland slaying. A few days later, Petitioner was arrested and interrogated by Wynne police officers. In a videotaped interview, Petitioner answered questions implicating himself in the crime, then he signed a written statement that summarized his activity on the night of the crime.[2] He was sixteen years old at the time. Collins told police that Petitioner shot the victim, but he also told two other individuals that he (Collins) was the trigger-man. Both Collins and Petitioner were charged with capital murder, and the death penalty was requested.

Following a jury trial in the Cross County Circuit Court in August 1999, Petitioner was convicted of capital murder and was sentenced to life imprisonment without parole. (R. 140-42.) Collins, in a separate trial, was convicted of capital murder and sentenced to death. See Collins v. State, 991 S.W.2d 541 (Ark. 1999).

Petitioner appealed his conviction to the Arkansas Supreme Court, raising the following claims: (1) the trial evidence was insufficient to support his conviction; (2) the trial court erred in refusing to suppress his custodial statement; (3) the trial court erred in excluding Petitioner's co-defendant's statements that he committed the murder and proof that the co-defendant had been convicted of the murder; (4) the prosecuting attorney engaged in improper commentary in his closing argument; and (5) the trial court erred in not requiring a race-neutral explanation for the prosecution's peremptory challenge of

---

[2]A transcript of the videotape appears at pages 94-132 of Resp't Ex. 1, which is attached to docket entry #4. An edited version of the videotape was admitted into evidence at trial, along with Petitioner's written statement. (R. 1454-61.) All record references are to the seven-volume record of Petitioner's state court proceedings, submitted as Resp't Ex. 2 to docket entry #11.

venire member Dorothy Caddell. (Resp't Ex. 1.) The Arkansas Supreme Court affirmed

Petitioner's conviction, and the United States Supreme Court denied his petition for a writ

of certiorari. Cox v. State, 47 S.W.3d 244 (Ark.), cert. denied, 534 U.S. 1022 (2001).

There is no evidence or allegation that he sought any post-conviction relief in state court.

Petitioner then filed this federal habeas petition, advancing the following claims:

>        1.      He was denied due process, in violation of the Fourteenth Amendment
> to the United States Constitution, when the trial court failed to sustain his challenge
> to prospective juror Dorothy Caddell;

>        2.      He was denied due process, in violation of the Fourteenth Amendment
> to the United States Constitution, because the evidence at trial was insufficient to
> support his conviction;

>        3.      He was denied due process, in violation of the Fourteenth Amendment
> to the United States Constitution, when the trial court refused to admit the
> statements of his co-defendant, Collins, under Ark. R. Evid. 804(b)(3); and

>        4.      He was denied due process, in violation of the Fourteenth Amendment
> to the United States Constitution, when the trial court failed to declare a mistrial due
> to improper comments of the prosecutor during closing argument.

<u>Standard of Review</u>

Respondent contends that, pursuant to 28 U.S.C. § 2254(d), this Court must defer

to the state courts' rulings on his claims as raised in Grounds 1, 2 and 4.

As an initial matter, Petitioner contends that § 2254(d)'s deferential standard is not

applicable because his petition seeks relief pursuant to 28 U.S.C. § 2241, rather than §

2254. When a prisoner is in custody pursuant to a state court judgment, 28 U.S.C. § 2254

is the sole means for challenging the validity of his state conviction or sentence. Singleton

v. Norris, 319 F.3d 1018, 1022-23 (8th Cir.), cert. denied, 540 U.S. 832 (2003) (§ 2254, not

§ 2241, is proper means for state prisoner to seek habeas relief). Petitioner is in custody

pursuant to a state court judgment and he challenges his conviction; therefore, this petition must be construed as brought pursuant to § 2254, and § 2254(d) applies.

In the interests of finality and federalism, a federal habeas court is constrained by § 2254(d) to exercise only a "limited and deferential review of underlying state court decisions." Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003). Thus, where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, id.; **or** (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). In evaluating a state court decision, a federal habeas court must presume any factual findings made by the state court to be correct unless rebutted by clear and convincing evidence. Id. § 2254(e)(1).

A state court decision is "contrary to" federal law under § 2254(d)(1) if it applies a rule that contradicts the controlling Supreme Court authority or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a Supreme Court case, but nonetheless reaches a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's decision involves an "unreasonable application" of federal law under § 2254(d)(1) if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable," and a state

adjudication may not be found unreasonable "simply because [the federal habeas] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 409, 411.

<u>Ground 1: Batson Challenge</u>

Petitioner is an African-American, and the victim was white. Petitioner says that, of the fifty-four members of the venire panel who were questioned as potential jurors in his case, nine were African-Americans. Of those nine persons, seven were excused for cause by the trial court, and one was excused by agreement of the parties. The remaining African-American juror, Dorothy Caddell, was removed by the prosecutor's exercise of a peremptory challenge. As a result, Petitioner was tried and convicted by an all-white jury. For his first federal habeas claim, Petitioner argues that, because the prosecutor failed to provide a racially neutral reason for striking Ms. Caddell, his federal constitutional right to an impartial jury and fair trial was violated.

The law is clear that a state violates the Equal Protection Clause of the Fourteenth Amendment when it exercises peremptory challenges to strike potential jurors on account of their race. <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986). To prove a <u>Batson</u> violation, a defendant must first make a *prima facie* showing "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." <u>Id.</u> at 93-94. Second, once the defendant has made out a *prima facie* case, the burden shifts to the state to come forward with a race-neutral justification for the strike. <u>Id.</u> at 94. Third, if a race-neutral explanation is tendered, the trial court must then decide "whether the opponent of the strike has proved purposeful racial discrimination." <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995).

The first <u>Batson</u> step is at issue in this case. A *prima facie* <u>Batson</u> violation can be established by showing (1) that the defendant is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race, (2) that the peremptory challenges constitute a jury selection process that permits "those to discriminate who are of a mind to discriminate," and (3) that these facts and "all relevant circumstances" give rise to an inference that the prosecutor used peremptory challenges to exclude jurors on account of their race. <u>Batson</u>, 476 U.S. at 96-97. Circumstances raising an inference of discrimination could be, among other things, a pattern of strikes or the prosecutor's questions and statements during jury selection. <u>Id.</u>

The <u>Batson</u> framework makes clear that, if no *prima facie* case has been made at the first threshold step, the burden never shifts to the prosecutor to articulate a race-neutral explanation for the disputed strike. <u>United States v. Lewis</u>, 892 F.2d 735, 737 (8th Cir. 1989) ("Because no *prima facie* case was shown, the government was not required to provide an explanation for its strike[.]"); <u>see</u> <u>Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co.</u>, 236 F.3d 629, 636 (11th Cir. 2000) ("[T]he establishment of a *prima facie* case is an absolute precondition to further inquiry into the motivation behind the challenged strike.").

With these clearly established principles in mind, the Court turns to the underlying state court record in Petitioner's case. The relevant facts, as summarized by the Arkansas Supreme Court, are undisputed:

> When Ms. Caddell was being questioned by the circuit court as part of *voir dire*, she admitted to having been the victim of a crime. In answer to the prosecutor's questions, she initially said that she could impose either the

death sentence or life without parole on [Petitioner] and that she could also follow an instruction on accomplice liability. However, she later stated in response to the prosecutor's questions that she could not sentence a sixteen-year-old to death. She also advised defense counsel that she had previously served on a jury where the defendant was found not guilty. She further stated that her son-in-law was a policeman in Forrest City.

At the time that Dorothy Caddell was questioned as part of *voir dire* and then struck by the prosecutor, only seven jurors had been seated. Four African-Americans had been excluded by the circuit court or by agreement of the parties. Four additional African-Americans remained to be questioned. Defense counsel made his <u>Batson</u> motion and argued that a *prima facie* case had been made because there were no African-Americans on the jury and no racially neutral reason had been given to exclude Ms. Caddell. The circuit court responded that it found that a *prima facie* case showing a <u>Batson</u> violation had not been made. The prosecutor added that there had been no pattern of discrimination, which <u>Batson</u> requires for a violation. Defense counsel's retort was that the only black juror the prosecutor had a chance to strike, he struck. The circuit court then ruled:

> Well, in the event Mr. Long [prosecutor] explained it based on the answers to the questions, the Court would not find that she was subject to cause but there's ample reason to exercise peremptory based on the responses to the questions she was asked and whether he chooses to explain that or not, the Court would have to find that to be the case, and in any event it wouldn't matter.

<u>Cox</u>, 47 S.W.3d at 255. Petitioner argued in his direct appeal that the trial court erred in not requiring the prosecutor to give a racially neutral reason for striking Ms. Caddell. In rejecting this argument, the Arkansas Supreme Court stated:

> The essence of [Petitioner]'s argument appears to be that a *prima facie* case was made under <u>Batson</u> when the prosecutor struck Ms. Caddell. Under the facts of this case, we disagree. This court has defined what must occur in order for a *prima facie* case to be made:
>
> > The strike's opponent must present facts, at this initial step, to raise an inference of purposeful discrimination. According to the <u>Batson</u> decision, that is done by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race. In deciding whether a *prima facie* case has been made, the trial court

8

should consider all relevant circumstances. Should the trial court determine that a *prima facie* case has been made, the inquiry proceeds to [Batson's] Step Two. However, if the determination by the trial court is to the contrary, that ends the inquiry.

MacKintrush v. State, 978 S.W.2d 293, 296 ([Ark.] 1998).

Certainly, Ms. Caddell, as an African-American, was part of a racially identifiable group. However, the circumstances at this stage of the *voir dire* do not support a finding that the strike was part of a process or pattern designed to discriminate or that the strike was used to exclude jurors because of their race. The prosecutor had made no other strikes of African-Americans at this stage and there were four more African-Americans left on the venire. The mere striking of one African-American venire person does not automatically equate to a *prima facie* case for a Batson violation. Cf. Wooten v. State, 931 S.W.2d 408 ([Ark.] 1996) (striking sole black person on venire may establish *prima facie* case; case did not say a *prima facie* case automatically was made).

We will reverse a circuit court's Batson findings only when they are clearly against the preponderance of the evidence. Sanford v. State, [962 S.W.2d 335 (Ark. 1998)]; Green v. State, 956 S.W.2d 849 ([Ark.] 1997). The circumstances of this case do not show that the circuit court clearly erred.

Cox, 47 S.W.3d at 256 (parallel citations omitted).

Here, Petitioner argues that this holding was an unreasonable application of clearly established federal law pursuant to § 2254(d)(1), based on the reasoning of the dissenting opinion in his direct appeal. The dissent questioned the trial court's ruling that Petitioner failed to make a *prima facie* Batson showing and that no race-neutral explanation was required from the prosecution. The dissent pointed to Arkansas case law indicating that the exclusion of the sole minority juror is sufficient to a make a *prima facie* case of discriminatory use of a peremptory challenge. The dissent also stated that, under the Supreme Court's analysis in Batson and Purkett, "a *prima facie* case can be established when only one juror is peremptorily struck because of race." Cox, 47 S.W.3d at 256-59 (Thornton, J., dissenting).

9

A trial court's determination of the <u>Batson</u> *prima facie* step presents a factual question; therefore, this Court's review is governed by § 2254(d)(2) (whether the state court decision was based on an "unreasonable determination of the facts"), rather than § 2254(d)(1) (whether the state court decision involved an "unreasonable application" of federal law). <u>Hall v. Luebbers</u>, 341 F.3d 706, 713 (8th Cir. 2003), <u>cert. denied</u>, 541 U.S. 996 (2004); <u>Weaver v. Bowersox</u>, 241 F.3d 1024, 1030-31 & n.2 (8th Cir. 2001). Furthermore, this Court must presume that the state courts resolved the factual question correctly under § 2254(e)(1) unless Petitioner rebuts that presumption with clear and convincing evidence. <u>Weaver</u>, 241 F.3d at 1030.

A trial court's determination of the <u>Batson</u> *prima facie* step is "highly fact-intensive" and "is based largely upon information that will not be evident from a reading of the record," such as the ability to "evaluate general demeanor; to observe attention span, alertness, and interest; and to assess reactions indicating hostility or sympathy towards or fear of the parties." <u>Id.</u> The trial court has "the unique opportunity to observe the entirety of *voir dire*," including not only the demeanor of the potential jurors, but also the demeanor of the prosecutor while questioning the prospective jurors, exercising the disputed peremptory strikes, and engaging in any in-court discussions. <u>Id.</u> at 1030-31.

It is undisputed that Petitioner is an African-American, that the prosecutor used a peremptory strike to exclude an African-American from the jury, and that this method of jury selection could lend itself to purposeful discrimination. It is also undisputed that Petitioner was tried and convicted by an all-white jury. This Court agrees with the general principle, expressed in the Arkansas Supreme Court dissent, that there may be cases where the exclusion of one juror is sufficient to establish a *prima facie* case under <u>Batson</u>. However,

although the number of minority jurors excluded is certainly relevant, numbers alone are "insufficient to negate or create [a *prima facie* case]." Luckett v. Kemna, 203 F.3d 1052, 1054 (8th Cir. 2000); see United States v. Wolk, 333 F.3d 997, 1007 (8th Cir. 2003) ("The mere recitation of the fact that black jurors were struck from the jury cannot alone establish a *prima facie* case."). Indeed, Batson requires examination of "all relevant circumstances" in determining whether a *prima facie* case has been demonstrated, and other factors in this case negate an inference of discrimination.

First, nothing in the record suggests any kind of pattern by the prosecutor, in this case or any others, of peremptorily striking African-American jurors. Out of eleven prospective African-American jurors,[3] Ms. Caddell was the only one stricken by the prosecutor. At the time of the strike, the prosecutor had exercised only one other strike, on a non-African-American in the same group as Ms. Caddell, (R. 762), and seven jurors had been seated. Three African-Americans had been excused by the court for cause, and one by agreement of the parties. Six other African-Americans were on the panel to be questioned, so the possibility still existed that others would be selected. After Ms. Caddell, the prosecutor exercised three more peremptory strikes, all on non-African-Americans, (R. 983, 1137, 1200), and the trial court excused the remaining African-Americans for cause.[4]

---

[3]The numbers reflected in the trial transcript are different from those stated by Petitioner and by the Arkansas Supreme Court. Examination of the transcript shows that approximately 64 prospective jurors were questioned (rather than 54); that 11 of those jurors were African-American (rather than 9); and that, following the strike of Ms. Caddell, six other African-Americans were questioned (rather than 4). The discrepancies, however, are not material here.

[4]In all, nine African-Americans were excused by the court for cause, most due to their professed inability to judge another person or to impose a life sentence or the death penalty, (R. 414-21 [Whiteside], 422-27 [Marrs], 622-24 [Hicks], 792-95 [Catron], 860-64 [Ross], 951-53 [Marble], 997-99 [Taylor]); one was excused because he believed he might be related to the defendant, (R. 1148-50 [Oates]); and one (a potential alternate juror) was excused for a combination of reasons, (R. 1271-72, 1274-75 [Eskridge]). A tenth was excused by agreement of the parties due to her knowledge of details of the crime at issue. (R. 574-78, 598

Moreover, there is no allegation here that the prosecutor systematically and routinely engaged in the practice of excluding minority jurors from jury service.

Second, nothing in the prosecutor's questioning (as reflected in the written transcript) suggested that he was attempting to exclude all African-American jurors from this jury. The *voir dire* in this capital case was lengthy, spanning four days and 1,094 pages of the trial transcript. (See R. 236-1330.) Ms. Caddell was in the fifth group of jurors that was questioned. The record shows that the questions the prosecutor directed to Ms. Caddell were no different from those directed to the other prospective jurors of both races, both before and after her exclusion. Furthermore, the trial judge was in the best position to observe the prosecutor's questioning of Ms. Caddell, as compared to his questioning of other potential jurors, and there is no mention of hostility or disparate examination of Ms. Caddell. Cf. Miller-El v. Dretke, 125 S. Ct. 2317, 2333-38 (2005) (prosecutor's disparate questioning of black venirepersons in ways that seemed meant to induce disqualifying answers or qualms about applying death penalty is evidence that state was trying to avoid black jurors).

Third, Ms. Caddell's responses gave rise to multiple race-neutral reasons for making her undesirable as a juror for the state or, for that matter, the defense. As noted by the Arkansas Supreme Court, the trial court stated that the prosecutor would have "ample reason" to exercise a peremptory strike against Ms. Caddell but did not require him to articulate those reasons due to the court's finding that no threshold *prima facie* case had been demonstrated. (R. 765-66.) The record supports the trial court's statement in this

[Hill].)

regard. Ms. Caddell initially stated that she could impose a punishment of life imprisonment or death by lethal injection. (R. 694.) The following exchange later occurred:

> PROSECUTOR: Ms. Caddell would the fact that [the defendant] was sixteen (16) years old at the time of the offense prevent you from convicting him?
>
> PROSPECTIVE JUROR CADDELL: Not of capital murder, but not lethal injection at sixteen (16).
>
> PROSECUTOR: Okay, so if you find that he's sixteen (16) years old, you could not sentence him to death by lethal injection?
>
> PROSPECTIVE JUROR CADDELL: No – definitely – no I couldn't – no.
>
> PROSECUTOR: Acceptable. You're entitled to feel that way.

(R. 710.)

The prosecutor followed this up later, as follows.

> PROSECUTOR: Ms. Caddell, I want to be sure that I understand you.
>
> PROSPECTIVE JUROR CADDELL: All right.
>
> PROSECUTOR: I understood you to tell me that if the defendant is sixteen (16) at the time of the offense you cannot impose the death penalty, or will not impose the death penalty period.
>
> PROSPECTIVE JUROR CADDELL: In good conscience I could not do that.
>
> PROSECUTOR: I can accept that. I just needed to know your answer to my question.

(R. 743.)

The record shows that, if not excused early on by the trial court, the prosecutor asked nearly every juror – regardless of race – if he or she could impose the death penalty and, specifically, if he or she could impose the death penalty on a sixteen-year-old. Besides Ms. Caddell, only one other juror (a non-African-American) expressed a similar

willingness to impose the death penalty but reluctance with respect to a sixteen-year-old. (R. 1055-56.)  Apparently due to other reasons,[5] defense counsel agreed that the juror should be stricken for cause, which the prosecutor said "did [him] a big favor."  (R. 1088.) The prosecutor also struck two white jurors who were weak on the death penalty in general.  (R. 692-94, 762; 955-57, 983.)   Reluctance to impose the death penalty is a permissible, race-neutral reason for striking a juror.  See <u>Luckett</u>, 203 F.3d at 1054-55. Petitioner has not identified any impaneled white juror who gave answers similar to those given by Ms. Caddell.

Ms. Caddell also stated that she had previously served on a jury that acquitted a defendant and that the state had been represented by the same prosecuting attorney.  (R. 714.)  This, too, is a legitimate race-neutral basis for a peremptory strike.  <u>United States v. Roan Eagle</u>, 867 F.2d 436, 442 (8th Cir. 1989) (permissible to strike juror on account of prior jury service that acquitted).

Other than saying that exclusion of Ms. Caddell resulted in an all-white jury, Petitioner has not presented any evidence – much less anything clear and convincing – to rebut the state courts' determination that all of the relevant considerations failed to establish a *prima facie* case of discrimination under <u>Batson</u>'s first step, obviating the prosecutor's obligation to offer a race-neutral explanation for striking Ms. Caddell.  Outside of a numbers analysis, Petitioner did not present to the state courts, and he has not identified here, any other facts and circumstances to support his *prima facie* case.  He has failed to overcome the statutory presumption of correctness afforded the state trial court's

---

[5]Friendship with the victim's family and a pending criminal charge against the juror's son by the same prosecutor. (R. 1035, 1063, 1042-44, 1087-89.)

factual determinations, and the Arkansas Supreme Court's rejection of his <u>Batson</u> challenge thus was not based on an unreasonable determination of the facts in light of the record before the trial court.  <u>See</u>  <u>Weaver</u>, 241 F.3d at 1031; <u>Luckett</u>, 203 F.3d at 1054.

This Court further finds that the Arkansas Supreme Court's decision was not contrary to or an unreasonable application of <u>Batson</u> or any other relevant United States Supreme Court precedent.  The standard articulated by the Arkansas Supreme Court for establishing a *prima facie* case is not contrary to that pronounced in <u>Batson</u>.  Moreover, in light of the circumstances appearing in the trial court record, as set forth above, the Arkansas Supreme Court did not unreasonably apply <u>Batson</u>'s principles in  determining that Petitioner had failed to make the requisite *prima facie* showing of discrimination. Nothing in the record suggests a pattern or intent to exclude African-American jurors. Additionally, and perhaps more importantly, the record shows that the stricken juror clearly demonstrated an inability to impose the death penalty if the defendant was only sixteen at the time of the offense.

Ground 1 does not entitle Petitioner to federal habeas relief and must be dismissed.

<u>Ground 2: Sufficiency of Evidence</u>

Next, Petitioner argues that the trial evidence was insufficient to support his conviction for capital murder.  Specifically, he argues that the evidence was insufficient to establish his liability as an accomplice because he was not the actual killer; he was merely in the company of someone who decided to kill after arrival; there was insufficient evidence that he aided, abetted, or assisted the killer; and there was no evidence of a plan or discussion to kill, or, if there was, that Petitioner knew about it.

As interpreted by the United States Supreme Court, the Due Process Clause of the Fourteenth Amendment guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979) (citing In re Winship, 397 U.S. 358 (1970)).  The evidence presented at a trial is constitutionally insufficient to convict only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.  In making this determination, all of the trial evidence is to be viewed in the light most favorable to the state. Id. at 319.  A reviewing court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and must defer to that resolution. Id. at 326.

It is the responsibility of the trier of fact to reconcile conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Id. at 319. The trier of fact is entitled to disbelieve uncorroborated or confused testimony, to take into account demeanor while testifying, and to consider whatever it concludes to be perjured testimony as affirmative evidence of guilt; these determinations cannot be reviewed. Wright v. West, 505 U.S. 277, 296-97 (1992). See Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000) (in reviewing sufficiency of the evidence, a habeas court is not permitted to conduct its own inquiry into witness credibility; "that is a task reserved to the jury").

The substantive elements of state crimes are defined by state law. Jackson, 443 U.S. at 324 n.16.  Under relevant Arkansas law, a person commits capital murder if, with the premeditated and deliberated purpose of causing the death of another person, he

causes the death of a person. Ark. Code Ann. § 5-10-101(a)(4) (1997). A person may properly be found guilty not only of his own conduct, but also the conduct of an accomplice. Id. §§ 5-2-401, 5-2-402; see Kennedy v. State, 923 S.W.2d 274, 277 (Ark. 1996). A person is an accomplice if, with the purpose of promoting or facilitating commission of an offense, he solicits, advises, encourages, aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403.

A defendant is not precluded from being charged and convicted as an accomplice to murder merely because he was not present when the murder took place, he did not take an active part in the murder, his role in the crime was nonviolent, or he was unaware that a murder would take place. Cassell v. Lockhart, 886 F.2d 178, 180 (8th Cir. 1989); Dixon v. State, 891 S.W.2d 59, 60-61 (Ark. 1995); Henry v. State, 647 S.W.2d 419, 424 (Ark. 1983); Roleson v. State, 640 S.W.2d 113, 115 (Ark. 1982).

Here, the Arkansas Supreme Court found the trial evidence to be sufficient under state law to support Petitioner's conviction for capital murder, stating the law as follows:

> .... The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence that is of sufficient certainty and precision that it compels a conclusion one way or another. On appeal, this court views the evidence in the light most favorable to the State and sustains a judgment of conviction if there is substantial evidence to support it. ...

Cox, 47 S.W.3d at 248 (citations omitted). The court then quoted the relevant statutes on accomplice liability and stated, "Mere presence when the crime is being committed and when one does not have a legal duty to act does not make one an accomplice." Id. at 249. The court stated that the jury obviously concluded that Petitioner was an accomplice with

Collins in perpetrating the crime and that its verdict was supported by substantial evidence. Id.

Petitioner first argues that the Arkansas Supreme Court "overlooked, misapprehended or ignored" the Jackson standard. The legal standard recited by the Arkansas Supreme Court, while resting on state law, is consistent with Jackson and Winship. See Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (it is not necessary for the state court to cite, or even be aware of, applicable United States Supreme Court opinions, as long as "neither the reasoning nor the result of the state-court decision contradicts them"); Sera v. Norris, 400 F.3d 538, 543 n.1 (8th Cir. 2005) (legal standards applied by the Arkansas Supreme Court to assess sufficiency of the evidence are not contrary to United States Supreme Court precedent). Moreover, neither party contends that the United States Supreme Court has addressed a case with facts that are "materially indistinguishable" from those involved here. Therefore, the state supreme court's decision regarding the sufficiency of the evidence was not "contrary to" applicable United States Supreme Court law under § 2254(d)(1).

Furthermore, the state supreme court's decision, viewed objectively, did not unreasonably apply these federal constitutional principles to the facts of Petitioner's case. Contrary to Petitioner's contention, there is evidence in the record which supports an inference that he facilitated and assisted in planning and committing the murder of Holly Strickland. Collins told Petitioner he wanted to go collect some money he was owed. Petitioner put two shells in the shotgun that was eventually used to kill the victim. Petitioner accompanied Collins as they left his house, and Petitioner carried the shotgun part of the way. He admitted that his fingerprints were on the shells and that they would

18

probably be on the trigger. He went with Collins to the door of the first residence, and there is evidence that he went to at least one other door as well. Asked what would have happened if the person at the first house had answered the door, Petitioner said he guessed he would have been shot. He said that no money was owed to Collins at the other houses and that Collins told Petitioner he would "do something else." At the last house, he heard three shots and a scream. He fled the scene with Collins, concealing the shotgun on his person. (Resp't Ex. 1, at 107-27; R. 1385-87, 1460-61.)

The jury could also infer from the evidence that the killing was premeditated and deliberate. Under Arkansas law, because intent rarely can be proved by direct evidence, a jury may infer premeditation and deliberation from circumstantial evidence such as the type and character of the weapon used, the manner in which the weapon was used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused. McFarland v. State, 989 S.W.2d 899, 903 (Ark. 1999). The necessary premeditation and deliberation is not required to exist for a particular length of time and may be formed in an instant. Id.

While there were inconsistencies in the evidence, it was the jury's responsibility to decide which witnesses to believe, to reconcile discrepancies, and to draw reasonable inferences. Petitioner's attorney competently explored the weaknesses of the state witnesses' testimony through cross-examination, and Petitioner's version of events was set forth in his videotaped and written statements, which were admitted into evidence. The jury was fully instructed on the relevant state law. Petitioner's counsel vigorously argued his defense theory that Collins was the murderer, that Collins was several years older than Petitioner and had a criminal history, that Petitioner loaded and carried the gun only

because Collins told him to, and that he fled with Collins because he was scared.  Counsel argued that Petitioner exercised poor judgment due to his youth and simply "was in the wrong place at the wrong time."  (R. 1529-43.)

The alternatives were thus fairly presented to and rejected by the jury.  On review, the state supreme court viewed the evidence in the light most favorable to the state, consistent with <u>Jackson</u>.  On habeas review, this Court must again view the trial evidence in the light most favorable to the state, must presume that all conflicting inferences were resolved in the state's favor, and must defer to that resolution.  Doing so, this Court is convinced that a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the charged offense of capital murder.

The Arkansas Supreme Court's decision – finding the trial evidence sufficient to support Petitioner's capital murder conviction –  thus was not contrary to the relevant federal law or an unreasonable application of that law under § 2254(d)(1).

Petitioner also contends that the Arkansas Supreme Court's conclusion was based on an unreasonable determination of the facts under § 2254(d)(2) because the court erroneously stated that his fingerprints were on two of the shells and on the trigger, when no evidence supports this statement.  He is correct that, according to the testimony, no identifiable prints were developed from the shotgun and no prints connected to Petitioner were ever found.  (R. 1428-29, 1436-37, 1469-70.)  Instead, as stated above, the evidence was that Petitioner told the interrogating officer that his fingerprints would be on the shells and "probably" on the gun and the trigger.  (R. 126-27.)  The misstatement does not materially undermine the supreme court's determination that the evidence was sufficient to support Petitioner's involvement in the crime.  Considering the facts as they appear in

the record (and as recited in this opinion), there is sufficient evidence under <u>Jackson</u> to support Petitioner's conviction.

Ground 2 must be dismissed as without merit.

<u>Ground 3: Exclusion of Collins' Statements</u>

For this claim, Petitioner contends that his federal constitutional rights were violated when the trial court refused to admit into evidence two statements made by Collins. The first, made to a friend shortly after the murders, was, "I shot the bitch." The second statement was that, after telling a jailer he was charged with capital murder, Collins said, "Yeah, and I did it, too." Petitioner says that exclusion of these statements rendered his trial unfair in violation of his federal due process rights and denied his federal constitutional rights to present a defense and to confront and fully cross-examine all witnesses.

Respondent says that this claim is procedurally barred because Petitioner did not argue in state court that exclusion of the statements violated any of his rights under the United States Constitution.

Before seeking federal habeas corpus relief, a petitioner must first fairly present the substance of each claim to the appropriate state court, thereby alerting the state court to the federal nature of each claim. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Palmer v. Clarke</u>, 408 F.3d 423, 430 (8th Cir. 2005). A habeas petitioner has fairly presented a claim when he has "properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." <u>Palmer</u>, 408 F.3d at 430 (internal citations and quotations omitted). To fairly present a federal claim to the state courts, the petitioner must have referred to "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a

pertinent federal constitutional issue" in a claim before the state courts. <u>Ford v. Norris</u>, 364 F.3d 916, 919 (8th Cir. 2004). Where a petitioner has argued in state court that an evidentiary error violated state law, but makes no argument regarding federal law, he has not fairly presented a federal claim despite its similarity to his state law claim. <u>Boysiewick v. Schriro</u>, 179 F.3d 616, 621 (8th Cir. 1999).

In Petitioner's state court proceedings, he argued that Collins' statements were admissible as a "statement against interest" under the hearsay exception found in Ark. R. Evid. 804(b)(3), and he cited only state cases as support. He did not argue in the trial court, or in the Arkansas Supreme Court, that exclusion of Collins' statements violated the United States Constitution or any other provision of federal law, nor did he cite to any cases that could be reasonably construed as authority for such a proposition. (<u>See</u> Resp't Ex. 1 at 147-52; R. 135-37, 1370-74, 1478-85.) Neither the state trial court nor supreme court addressed whether exclusion of the statements violated federal law, understandably limiting their rulings to the state-law evidentiary issue raised by Petitioner. Under these circumstances, Petitioner did not fairly present a federal claim to the state courts.

Ground 3 is, therefore, procedurally defaulted and cannot be reviewed here unless Petitioner demonstrates (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent of the underlying offense. <u>Dretke v. Haley</u>, 541 U.S. 386, 388 (2004); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

As cause, Petitioner contends that his state court attorney should have asserted a due process violation. Ineffective assistance of trial or appellate counsel may constitute cause to lift a procedural bar. Murray, 477 U.S. at 488. However, Petitioner cannot rely upon ineffectiveness of counsel as cause here because he has never presented that ineffectiveness claim to the state courts. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (ineffective assistance of counsel asserted as cause for procedural default of another federal claim can itself be procedurally defaulted). Petitioner had a state forum for presenting any ineffective-assistance claims through a post-conviction petition, did not do so, and has failed to offer any explanation for his default. He has not given the state courts an opportunity to consider whether his attorney was incompetent in failing to raise a federal issue regarding exclusion of Collins' statements; therefore, he cannot now assert ineffectiveness as cause.

Since no cause has been shown, the prejudice element need not be addressed. McCleskey v. Zant, 499 U.S. 467, 502 (1991).

Petitioner also asserts that he is actually innocent of being an accomplice to capital murder, which constitutes an exception to the cause-prejudice requirement. To pass through the actual innocence gateway and permit federal habeas review of otherwise defaulted claims, a petitioner's case must be "truly extraordinary." Schlup v. Delo, 513 U.S. 298, 327 (1995). To fit within this narrow exception, a habeas petitioner must (1) support his allegations of constitutional error with new reliable evidence not presented at trial and (2) show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him." Id. at 324, 329.

Petitioner does not present any evidence in support of his claim of innocence, much less anything "new" or "reliable." Even if any of his habeas claims have merit, "without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316; see Hall v. Luebbers, 296 F.3d 685, 698 (8th Cir. 2002) (no actual-innocence showing with evidence that was "neither new nor sufficient" under Schlup standard), cert. denied, 538 U.S. 951 (2003). The actual-innocence exception to the cause-prejudice requirement is inapplicable.

Even if the procedural bar is overlooked, this claim is without merit. The admissibility of evidence in a state trial is a matter of state law, and habeas relief will be granted only if the state court's evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Palmer, 408 F.3d at 436. Rulings on the admission or exclusion of evidence in state trials "rarely rise to the level of a federal constitutional violation." Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). Furthermore, although the United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense," the right to introduce favorable evidence is not unlimited, and a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Lannert v. Jones, 321 F.3d 747, 753-54 (8th Cir.), cert. denied, 540 U.S. 917 (2003). Again, a habeas petitioner bears the heavy burden of demonstrating a due process violation. Id. at 754.

This Court cannot review the Arkansas Supreme Court's determination that the evidence was inadmissible under state law. Nebinger, 208 F.3d at 696. Moreover, the

exclusion of Collins' statements was not so prejudicial as to rise to the level of a federal constitutional due process violation. Petitioner's videotaped and written statements implicated Collins as the triggerman, and Petitioner's counsel was permitted to argue that Collins, rather than Petitioner, murdered the victim and that Petitioner just happened to be with him at the time. As noted by the Arkansas Supreme Court, due to the prosecution's accomplice liability theory, the fact that Collins said he committed the murder would not preclude the jury from finding that Petitioner was an accomplice and assisted in its perpetration. Cox, 47 S.W.3d at 253. In fact, as Petitioner acknowledged in his state court proceedings, proof that Collins was guilty of capital murder would have been a double-edged sword because, if the jury found Petitioner to be Collins' accomplice, Petitioner would be guilty of the same crime. (Resp't Ex. 1 at 152.) As set forth earlier, there was substantial evidence of Petitioner's involvement which Collins' statements do nothing to dispute.

Under these circumstances, Petitioner has not sustained his burden of demonstrating that the alleged evidentiary error "was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair," so as to amount to a denial of due process. See Gee v. Groose, 110 F.3d 1346, 1350 (8th Cir. 1997).

Ground 3 must be dismissed as procedurally barred or, alternatively, as without merit.

### Ground 4: Prosecutor Comments

For his last claim, Petitioner contends that the trial court erred in failing to declare a mistrial due to improper comments by the prosecutor during closing arguments, which rendered his trial fundamentally unfair and denied him due process.

25

In determining whether a prosecutor's closing argument violated a defendant's federal due process rights, the United States Supreme Court has articulated the pertinent inquiry as "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). This issue is subject to "an exceptionally limited review" due to the strict due process standard of constitutional review, the deferential review mandated by § 2254(d), and a habeas court's "less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial." <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999).

The first statements to which Petitioner objects were as follows:

PROSECUTOR: ... It's ludicrous for Mr. Etoch to stand up here and try to tell you that [Petitioner] didn't know that. Mr. Long told you in *voir dire*, sometimes people try to get you to believe some ridiculous things in here and they will. I made a list of some of the doozies I've heard so far. Labeled "The crazy things you should not believe." If the defendant is polite during the interrogation, you can't convict him. It doesn't matter what comes out of his mouth. If he's polite, you can't convict him.

DEFENSE COUNSEL: Your Honor, I object to the characterization that maybe I said something like that. I don't recall saying it.

...
COURT: I don't know that he said that, he asked some questions. And I guess you can argue what you think he was getting at and going to.

...
PROSECUTOR: ... Now Mr. Etoch is about to get up here and he's going to try to sell you a load of crap.

DEFENSE: Your Honor, I object. I have been attacked, attacked, and attacked. He doesn't know what I'm going to say. Has no idea.

COURT: Use a different phrase. The objection is sustained.

PROSECUTOR: Mr. Etoch is about to get up here and tell you why his client is not guilty of killing Holly Holmes Strickland, even though he loaded the gun, even though he carried the gun, even though he concealed the weapon after the crime, even though he walked up on people's front porch in the middle of the night and banged on their door, waiting on them to come to the door so they could kill them. I think all of that falls under number four [in my list of] "crazy things you shouldn't believe." ...

DEFENSE: Your Honor, may we approach?

(R. 1524-25, 1527-28.) At that point, Petitioner's counsel moved for a mistrial and, upon denial, asked for a limiting instruction, which the trial court also refused. (R. 1528-29.) The Arkansas Supreme Court affirmed, as follows:

We have consistently held that the declaration of a mistrial is an extreme remedy, which should only be granted when justice cannot be served by continuing the trial. Remarks that require reversal are rare and require an appeal to the jurors' passions. The circuit court is given broad discretion to control counsel in closing arguments, and we only interfere with such discretion when there has been a manifest abuse of discretion.

The prosecutor's comment that defense counsel was about to sell the jury a "load of crap" was certainly crude and inappropriate. However, we conclude the circuit court correctly sustained defense counsel's objection and declined to declare a mistrial.

Cox, 47 S.W.3d at 254 (citations omitted).

Although "[p]rosecutors should refrain from personal attacks on defense counsel," any inappropriate comments must be examined in the context of the proceedings to determine whether they fatally infected the entire trial and deprived a criminal defendant of fundamental fairness as guaranteed by the United States Constitution. United States v. Franklin, 250 F.3d 653, 660 (8th Cir. 2001); Roberts v. Delo, 205 F.3d 349, 351 (8th Cir. 2000).

Here, the prosecutor's criticism of defense counsel was inappropriately disrespectful but the comments were not so egregious and inflammatory as to jeopardize Petitioner's

due process rights. The trial court, in the jury's presence, sustained Petitioner's immediate objection to the "load of crap" statement and admonished the prosecutor to use a different phrase. In a bench discussion, the prosecutor apologized for his "selection of terminology" and said he just got "carried away" and made an "unfortunate mischaracterization." (R. 1529.) In his closing argument, Petitioner's counsel made efforts to minimize any prejudice the comments may have caused. Petitioner's counsel retorted that he would not "try to attack" the prosecutors, and he asked the jury to remember what they had heard and to apply the facts to the law given by the judge. He specifically addressed the comments made by the prosecutor. (R. 1530-31.) The trial judge instructed the jurors that it was their duty to determine the facts from the evidence produced and to render their verdict upon the evidence and law, and they were instructed to not permit "sympathy, prejudice or like or dislike" of any party or attorney to influence their findings. (R. 1510.) They were also instructed that closing arguments were not evidence, that any statements or remarks of the attorney with no basis in the evidence should be disregarded, and that it was up to the jury to determine what evidence to believe or disbelieve. (R. 1510-11.)

Under these circumstances, the Court cannot say that the prosecutor's criticism of defense counsel's arguments so infected Petitioner's trial with unfairness as to constitute a due process violation. The Arkansas Supreme Court's rejection of this claim thus was not contrary to or an unreasonable application of federal law.

Petitioner further takes issue with other comments by the prosecutor in his closing argument, which he says were references to Collins' inadmissible hearsay statement to police that Petitioner was the one who shot the victim.[6] The exchange was as follows:

PROSECUTOR: Think about what your experiences in life have taught you. If two people are involved in something like this together and you separate them and interview them, you ask them both, "did you pull the trigger?"

DEFENSE: Your Honor I object. May I approach? (Then bench conference.) Your Honor, all these jurors know some facts about this case. Mr. Long has been going at it, on and on about he get (sic) in Kingrale Collins' statement and now he's saying that if two people are separated, each person says the other one did it. He's just trying to get in Kingrale Collins' statement. I object and I move for a mistrial.

PROSECUTOR: It's nothing but common sense, common argument.

DEFENSE: He's arguing what the co-defendant said, not what Richard Cox said.

COURT: Motion is denied.

PROSECUTOR: You take these two people who you are trying to make criminally responsible for their activities and you separate them, you ask them both, did you pull the trigger? I leave it for you to determine if each of them was asked that question what it would be.

DEFENSE: I object.

COURT: Objections overruled.

PROSECUTOR: I leave it for you to deduce what each of the responses to that question would be, simply because they would both be trying to avoid as much responsibility as they could. "Oh, I carried, but I didn't pull the trigger. I loaded it, but I didn't pull the trigger."

DEFENSE: I guess this is a continuing objection, your Honor.

---

[6] See R. 2 (Collins' statement to police), 192-95 (trial court's ruling that this statement was inadmissible).

(R. 1544-45.)[7]

The Arkansas Supreme Court found that the trial court did not err in overruling

Petitioner's objection, as follows:

> [Petitioner] argues that the prosecutor's argument amounted to the prosecutor's saying that Collins pointed the finger at [Petitioner] as the perpetrator of the murder just as [Petitioner] had said Collins committed it. We do not see it that way.  Rather, it appears to us that the prosecutor broached a hypothetical situation and that his allusion, if any, was to [Petitioner's] statement where he admitted to only carrying the shotgun but not to pulling the trigger.  In our judgment, there had to have been a more specific reference to Collins's statement, where he incriminated [Petitioner] and said he was the shooter, for error to have occurred. That did not transpire.

Cox, 47 S.W.3d at 255.

Petitioner contends that the prosecutor's comments were unfair and not based upon

the evidence.  Closing arguments may be prohibited that "misrepresent the evidence or the

law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury."

Richardson v. Bowersox, 188 F.3d 973, 980 (8th Cir. 1999).  The state supreme court

determined that the prosecutor's comment was not an impermissible reference to Collins'

hearsay statement (which was not in evidence) but instead was a legitimate attempt to

discredit Petitioner's statements that he merely carried the gun and did not use it to shoot

the victim.  This is a reasonable determination that is supported by the record.  See

Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) (habeas court "should not lightly infer

that a prosecutor intends an ambiguous remark to have its most damaging meaning or that

a jury ... will draw that meaning from the plethora of less damaging interpretations").

---

[7]Although page 1544 is missing from the transcript provided to this Court, the colloquy as quoted in the Arkansas Supreme Court's opinion is undisputed.

Furthermore, in light of the trial court's instructions and the record as a whole, the comments cannot be said to have infected Petitioner's trial with fundamental unfairness.

The Arkansas Supreme Court's rejection of Petitioner's second claim of prosecutorial misconduct was not contrary to, or an unreasonable application, of clearly established United States Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the trial record.

Ground 4 must be dismissed.


## Conclusion

Petitioner's claims are without merit or procedurally barred. This 28 U.S.C. § 2254 petition for writ of habeas corpus is, therefore, dismissed in its entirety, with prejudice.

IT IS SO ORDERED this 19th day of July, 2005.


_____
UNITED STATES MAGISTRATE JUDGE